# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMERON GORE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ROBERT WILKIE, Secretary of the U.S. Dep't of Veterans Affairs, *et al.*, <br><br> *Defendants.* | Civil Action No. 19-cv-1134 (RDM) |

## **MEMORANDUM OPINION**

Plaintiff Cameron Gore worked as an attorney in the Office of the General Counsel at the Department of Veterans Affairs ("VA") for nearly twenty years before he resigned in May 2018. Dkt. 8 at 4, 13 (Am. Compl. ¶¶ 9, 22(EE)). He alleges that he resigned (1) because two of his colleagues, Robert Fleck and Kristina Wiercinski—a married couple who were investigated for misconduct related to Wiercinski's hiring by the office—lied to investigators about when Gore called Wiercinski to offer her a job at the VA; (2) because the VA failed to terminate Fleck for his misconduct and for lying to the investigators and failed take any other meaningful disciplinary action; and (3) because it became intolerable for Gore to continue working alongside Fleck and Wiercinski in light of these events and to continue working for an agency that failed to take his allegations or the misconduct at issue seriously. *See* Dkt. 8 at 10–15 (Am. Compl. ¶ 22). Gore further alleges that the offending conduct continued after he left the VA, when Fleck sued the VA and continued to make the same false statements in his complaint about Gore's actions, and the VA took no steps to correct those allegedly false allegations. *Id.* at 13–14 (Am. Compl. ¶¶ 22(FF)–(MM)). According to Gore, Fleck and Wiercinski acted in the course of their

employment at the VA, and senior VA officials (most notably the General Counsel) also engaged in related acts of misconduct in the course of their employment. *See id.* at 15 (Am. Compl. ¶ 22(OO)) (quoting a letter from VA disputing Gore's contention that VA employees acted within the scope of their employment). Based on the narrative set forth in his 112-page amended complaint, Gore contends that he is entitled to recover from the VA under the Federal Tort Claims Act, 28 U.S.C. § 1346, for intentional and negligent infliction of emotional distress and constructive discharge. *Id.* at 62–84 (Am. Compl. ¶¶ 88–107). Gore's spouse, Plaintiff Heather Woods, brings a separate claim for loss of consortium arising out of this same alleged misconduct. *Id.* at 84–85 (Am. Compl. ¶ 108). Defendants move to dismiss all of Plaintiffs' claims for lack of subject-matter jurisdiction or, in the alternative, for failure to state claims upon which relief can be granted. *See* Dkt. 19.

For the following reasons, the Court will **GRANT** Defendants' motion to dismiss.

## I. BACKGROUND

**A.     Factual Background**

The following allegations from Plaintiffs' complaint are taken as true for purposes of Defendants' motion to dismiss. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Gore worked as an attorney in the VA's Office of General Counsel ("OGC") from January 1999 until May 4, 2018, when he resigned from his job as Chief Counsel for the OGC's Real Property Law Group. Dkt. 8 at 4, 13 (Am. Compl. ¶¶ 9, 22(EE)). His complaint centers on the VA's investigation of Robert Fleck—a coworker of Gore's—and Fleck's actions related to the OGC's hiring of Fleck's wife, Kristina Wiercinski, as an e-discovery attorney who would

provide support to both Gore and Fleck's groups within the OGC. *See* Dkt. 8 at 5, 8–9 (Am. Compl. ¶¶ 10–11, 18–19).

In June 2016, the VA's Deputy General Counsel, Richard Hipolit, asked Fleck for Wiercinski's resume in connection with hiring new attorneys in the OGC, and Fleck provided him the resume. *Id.* at 10 (Am. Compl. ¶ 22(A)–(B)). In early August 2016, Gore, Fleck and others within the OGC conferred and decided that, instead of hiring a general staff attorney to fill a vacancy within Gore's group, the office should hire an e-discovery attorney. *See id.* (Am. Compl. ¶ 22(C)). On August 12, 2016, the OGC posted the vacancy on an internal webpage and indicated that any applications from non-VA employees should be sent directly to Gore for evaluation. *Id.* (Am. Compl. ¶ 22(E)). On August 16, 2016, two OGC employees applied for the position. *Id.* (Am. Compl. ¶ 22(F)). On August 18, 2016, Wiercinski sent Gore her application by email. *Id.* (Am. Compl. ¶ 22(G)).

On September 30, 2016, Fleck emailed Wiercinski certain "[c]onfidential VA [i]nformation" from his work computer to her personal computer. *Id.* at 11 (Am. Compl. ¶ 22(I)). On October 4, 2016, a panel of OGC attorneys interviewed all three candidates for the vacancy and recommended Wiercinski to Gore "as the only candidate to be considered for the position." *Id.* (Am. Compl. ¶ 22(J)). That same day, Gore requested and received "clearance" from human resources to contact Wiercinski and to inform her that she has been "selected" for the position. *Id.* (Am. Compl. ¶ 22(K)–(L)).

Following the VA's decision to hire Wiercinski, the VA's Office of Inspector General ("OIG") investigated whether Fleck improperly played a role in the agency's decision to hire his wife. *Id.* at 8 (Am. Compl. ¶ 18). Gore alleges that both Wiercinski and Fleck "lied repeatedly" "under oath" in the course of that investigation and, in particular, that they "falsely alleg[ed] that

3

Gore telephoned Wiercinski in mid-Sept[ember] 2016[] and offered her the e-discovery position," *id.* at 9 (Am. Compl. ¶ 19)—that is, before Fleck allegedly sent Wiercinski any confidential VA information.  Gore vehemently disputes that he called Wiercinski before the panel interviewed the applicants and recommended that the VA hire Wiercinski.  *See, e.g.*, *id.* at 9, 10 (Am. Compl. ¶¶ 19, 22(H)).  To do so, Gore explains, would have been "prior to and outside of the well-established . . . processes, procedures [and] protocols" of the VA.  *Id.* at 9 (Am. Comp. ¶ 19).  Gore further alleges that, as a result of Fleck and Wiercinski's false testimony, he "bec[ame] a 'subject of the investigation.'"  *Id.* at 12 (Am. Compl. ¶ 22(S)).  On March 29, 2018, the OIG issued its report which found, among other things, that "Fleck [and] Wiercinski lied repeatedly about Gore while testifying under oath to multiple OIG investigators."  *Id.* at 12 (Am. Compl. ¶ 22(W)).  The report also allegedly recommended that Fleck be terminated.  *See id.* at 12 (Am. Compl. ¶ 22(V), (Z)).

In April 2018, after issuance of the report, Gore continued to follow up with leadership in the OGC about the "accountability process regarding the OIG report."  *Id.* at 12 (Am. Compl. ¶ 22(X)—(Y)).  He was, however, "rebuffed."  *Id.* at 12 (Am. Compl. ¶ 22(X)).  Gore also expressed "safety concerns about having to continue [to] work[] with . . . Fleck [and] Wiercinski," *id.* at 13 (Am. Compl. ¶ 22(AA)), after Fleck was not fired, notwithstanding the OIG report's recommendation, *id.* at 12–13 (Am. Compl. ¶ 22(Z)).  Gore ultimately took a leave of absence from April 23, 2018 to May 4, 2018, after which he resigned his position.  *Id.* at 13 (Am. Compl. ¶ 22(DD)–(EE))

After Gore resigned, Fleck filed a lawsuit in this Court against the VA under the Privacy Act, alleging that the OIG report contained false information and asserting that Gore called Wiercinski  in mid-September 2016.  *Id.* (Am. Compl. ¶ 22(FF)); *see also Fleck v. Dep't of*

*Veterans Affairs Office of the Inspector Gen.*, No. 18-cv-1452 (D.D.C. filed Jun. 20, 2018). The VA moved to dismiss the suit and, Gore alleges, the attorneys at the Department of Justice representing the VA failed to advise this Court that the agency had already "reviewed and concurred with the [OIG's] finding" that Gore did not call Wiercinski to offer her the job in mid-September 2016. Dkt. 8 at 12 (Am. Compl. ¶ 22(LL)); *see also Fleck v. Dep't of Veterans Affairs, Office of the Inspector General*, 2020 WL 42842 (D.D.C. Jan. 3, 2020).

B.  **Procedural Background**

On April 19, 2019, Gore filed this suit against Secretary Wilkie and the Department of Veterans Affairs for intentional infliction of emotional distress (Count I), Dkt. 8 at 62–80 (Am. Compl. ¶¶ 88–102); negligent infliction of emotional distress (Count II), *id.* at 80–82 (Am. Compl. ¶¶ 103–04); and constructive termination (Count III), *id.* at 82–84 (Am. Compl. ¶¶ 105–07). His spouse, Heather Woods, joins the action and seeks to recover on a theory of loss of consortium (Count IV). *Id.* at 84–85 (Am. Compl. ¶ 108).

## II.  LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(1) challenges the court's jurisdiction to hear a claim and may raise a 'facial' or a 'factual' challenge to the court's jurisdiction." *Lemma v. Hispanic Bar Ass'n*, No. 17-2551, 2019 WL 4043983, at *2 (D.D.C. Aug. 27, 2019). A facial challenge asks whether the plaintiff has alleged facts sufficient to establish the court's jurisdiction, while a factual challenge asks whether "the complaint [as] supplemented by undisputed facts evidenced in the record, or the complaint [as] supplemented by undisputed facts plus the court's resolution of disputed facts" establish that the court has jurisdiction. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). The plaintiff bears the burden of

5

establishing that the Court has subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

A motion to dismiss for failure to state a claim under Rule 12(b)(6), in contrast, "tests the legal sufficiency of the allegations contained in the complaint." *Betesfa v. United States*, 410 F. Supp. 3d 132, 137 (D.D.C. 2019). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (ellipsis in original). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations and footnote omitted).

### III.  ANALYSIS

**A.  Plaintiffs' Claims Under the APA**

As an initial matter, Gore and the VA dispute what claims Gore has brought. According to the VA, Gore brings only claims for damages under the FTCA. *See* Dkt. 19 at 14. Gore, in contrast, argues that his complaint should be read to assert both a claim under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, and a series of FTCA claims. *See* Dkt. 20 at 16–17, 27.

The complaint is not, by any measure, a paragon of clarity. Indeed, had the VA moved to dismiss under Federal Rule of Civil Procedure 8, it might well have prevailed on that ground alone. Fed. R. Civ. P. 8 (requiring pleadings to contain "a short a plain statement of the claim").

The VA is also correct that the section of complaint entitled "Causes of Action" refers only to "claims under the FTCA based on intentional infliction of emotional distress (denominated as 'Count I'), negligent infliction of emotional distress (denominated as 'Count II'), constructive termination (denominated as 'Count III'), and loss of consortium (denominated as 'Count IV')." Dkt. 22 at 8 (citing Dkt. 8 at 62–85 (Am. Compl. ¶¶ 88–108)). Three paragraphs of the 130-paragraph complaint, however, do refer to the APA, as does Gore's prayer for relief—at least in passing. Dkt. 8 at 2, 29, 34, 109 (Am. Compl. ¶¶ 2, 50, 54). For present purposes, however, the Court need not decide whether Gore has, in fact, pled an APA claim. Rather, because the Court agrees with the VA that, even if an APA claim can be found lurking in the complaint, Gore lacks standing to pursue such a claim, Dkt. 22 at 7–9, the Court can turn directly to that question.

The APA permits "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to seek judicial review of that action in the federal courts. 5 U.S.C. § 702. A reviewing court may "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(a), or may "hold unlawful and set aside agency action" if it is, *inter alia*, "in excess of [the agency's] statutory . . . authority," *id.* § 706(2)(C). The APA, however, provides a vehicle for such judicial review of an agency action only where "there is no other adequate remedy in a court." *Id.* § 704.

Gore characterizes his APA claim as arising from his supervisors' alleged failure to comply with Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017 ("Accountability Act"), Pub. L. No. 115-41, 131 Stat. 862, codified at 38 U.S.C. § 713 *et seq.*, by declining adequately to discipline Fleck for his alleged misconduct, including his false testimony regarding Gore's actions. Dkt. 20 at 16. Gore asserts that by harboring Fleck

Defendants created an untenable work situation for Gore, as he had offered testimony to investigators that directly controverted Fleck's testimony. Dkt. 20 at 16–25.

According to the VA, this claim fails for three reasons. First, the VA questions both whether Gore is an "aggrieved person" within the meaning of the APA such that he may invoke that statute to enforce the Accountability Act and whether he has Article III standing to pursue such a claim. *See* Dkt. 22 at 8–9. Second, the agency contends that Gore's supervisors did not violate the Accountability Act because their discipline of Fleck fell within the discretion granted to them under that Act, and this Court may not review that exercise of discretion. *Id.* at 10–11. Finally, it argues that the APA does not provide a vehicle for review of these claims because a separate statute, the Civil Service Reform Act, 5 U.S.C. § 1101, *et seq.*, provides the exclusive mechanism for review of claims like Gore's and therefore offers an "adequate remedy." *Id.* at 9–10. Because the Court agrees with the VA's first contention—that Gore has failed to allege facts sufficient to sustain his Article III standing to sue under the APA of the Accountability Act—it need not reach the VA's remaining arguments.

"Article III of the Constitution limits the jurisdiction of federal courts to 'actual cases or controversies between proper litigants.'" *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 661 (D.C. Cir. 1996) (en banc)). The "plaintiff bears the burden of ... establishing the elements of standing," and each element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal quotation marks omitted) (second quote quoting *Lujan*, 504 U.S. at 561). As a result, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim [of

standing] that is plausible on its face." *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Establishing standing requires a showing of three elements—injury in fact, causation, and redressability—which together constitute the "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560.  On a motion to dismiss, "the plaintiff must sufficiently allege a 'concrete and particularized' injury that is 'fairly traceable to the challenged action of the defendant' and 'likely' to be 'redressed by a favorable decision.'" *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017) (quoting *Lujan*, 504 U.S. at 560–61).  The first element, injury in fact, requires that a plaintiff show an "invasion of a legally protected interest which is . . . actual or imminent, not conjectural or hypothetical." *Arpaio*, 797 F.3d at 19 (quoting *Lujan*, 504 U.S. at 560).  The second element, causation, demands a "causal connection between the injury and the conduct complained of" that is attributable to the defendant, "and not the result of the independent action of some third party not before the court." *Id.* (quoting *Lujan*, 504 U.S. at 561).  The final element, redressability, requires that the injury be remediable "by a favorable decision." *Id.* (quoting *Lujan*, 504 U.S. at 560–61).

Although Gore's APA claim is difficult to decipher and faces numerous jurisdictional and substantive hurdles, its most evident flaw is that Gore has failed to identify any redressable injury that he suffered as a result of the VA's alleged violation of the Accountability Act.  Gore does not allege that the VA took any action against him under the Accountability Act; rather, he alleges that the agency violated the act by failing to impose sufficiently severe discipline on Fleck.  His theory is apparently that by failing to terminate or more severely discipline Fleck, the agency made his working environment intolerable and forced him to resign.  But even if that

causal chain withstood scrutiny—and the Court doubts that it does—Gore has failed to explain how a Court order would redress any causally-related injury he suffered.

The APA contains a limited waiver of sovereign immunity that applies only to claims against the United States "seeking relief other than money damages," 5 U.S.C. § 702. Accordingly, any APA injury alleged by Gore cannot be remedied by a damage award. Moreover, even though back pay is treated as an equitable remedy in some contexts, the APA's waiver of sovereign immunity does not reach claims for back pay. *See Hubbard v. EPA*, 982 F.2d 531, 532 (D.C. Cir. 1992) (en banc); *McKoy v. Spencer*, 271 F. Supp. 3d 25, 33 (D.D.C. 2017). Nor is there any basis to conclude that Gore might seek reinstatement at some time or that, if reinstated, he would continue to experience an intolerable work environment based on the VA's failure to subject to Fleck to more severe discipline or to require that he undergo additional training. *See Tolton v. Jones Day*, No. 19-945, 2020 WL 2542129, at *37–38 (D.D.C. May 19, 2020) (explaining that a plaintiff seeking reinstatement might have standing to seek injunctive relief redressing discriminatory employment practices at their former employer). Finally, a court order declaring that the "warning letters that Byrne issued to Fleck" or "the corresponding requirement that Fleck take additional training violated the APA" or the Accountability Act, Dkt. 8 at 109 (Prayer for Relief), would not redress any cognizable injury that Gore allegedly suffered.

In sum, the complaint fails to identify any nonmonetary form of relief that would remedy an actual or imminent injury that Gore allegedly suffered due to the agency's alleged failure to enforce the Accountability Act. *Id.* at 109–11 (Prayer for Relief). The Court, accordingly, lacks Article III jurisdiction to consider Gore's APA claim.

**B.     Plaintiffs' FTCA Claims**

    1.     *Constructive Discharge*

The VA moves to dismiss Gore's constructive discharge claim on the ground that no such claim is cognizable under D.C. law, and therefore he cannot pursue such a claim against the VA under the FTCA. *See* Dkt. 19 at 19. The Court agrees. "The liability of the United States for FTCA claims is determined by the law of the place of the tort," *Totten v. Norton*, 421 F. Supp. 2d 115, 123 n.5 (D.D.C. 2006), which, here, is the District of Columbia, *see* Dkt. 8 at 3 (Am. Compl. ¶ 4). Constructive discharge is not itself a cause of action but, instead, serves only to permit liability where an employee's firing would otherwise be actionable. *See Bean v. District of Columbia*, 264 F. Supp. 3d 242, 259 (D.D.C. 2017). The general rule under D.C. law is that "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991). There is, however, a narrow exception to that general rule, giving rise to liability for wrongful termination where an employer "retaliate[s] against an employee by discharging that employee for refusing to break the law." *Id.* at 32 (citing W. Prosser & W. Keeton, The Law of Torts § 130, at 1027–28 (5th ed. 1984)). Gore contends that the VA is liable for his constructive discharge because the agency violated the Accountability Act by failing adequately to discipline Fleck. *See* Dkt. 20 at 24–25. He does not, however, allege that his employer asked him to break the law under penalty of termination, nor does he allege that the agency's purported violation of the Accountability Act is itself actionable (aside for his flawed APA theory, discussed above).

Gore, accordingly, fails to state a claim under the FTCA relating to his alleged constructive termination.

2.      *Gore's Remaining FTCA Claims*

The VA moves to dismiss Gore's remaining FTCA claims for lack of subject-matter jurisdiction.  Dkt. 19 at 14.  The FTCA waives the sovereign immunity of the United States and "grants federal district courts jurisdiction over claims arising from certain torts committed by federal employees in the scope of their employment."  *Sloan v. U.S. Dep't of Housing & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001) (citing 28 U.S.C. §§ 1346(b), 2674).  Among other exceptions, however, the waiver of sovereign immunity does not extend to "[a]ny claim arising out of . . . libel, slander, misrepresentation, [or] deceit."  28 U.S.C. § 2680(h).  The VA contends that because Gore's remaining FTCA claims "arise from alleged false statements, they cannot be pursued under the FTCA."  Dkt. 19 at 14–15.  The Court agrees.

According to Gore, Fleck and Wiercinski's acts that give rise to his claims for intentional and negligent infliction of emotional distress are "are markedly distinct from [claims for] misrepresentation, libel, or slander."  Dkt. 20 at 39.  The difference, in Gore's view, is that the conduct that he challenges here put him "at risk for perjury or making false statements (when Gore testified to the OIG), criminal liability, prison time, and monetary fines."  *Id.*  But, even accepting Gore's contention that he suffered emotional distress—including worries that the inconsistencies between his (allegedly truthful) testimony and Fleck's (allegedly false) testimony might land him in legal hot water—his claims turn on the premise that Fleck knowingly made false statements about Gore and that those falsehoods caused Gore injury.  *Id.* at 39-40.  The fact that Gore does not use the labels "libel" or "slander" and, indeed, disavows those labels does not alter the nature of his claims and does not avoid the broad exception to the FTCA for claims "arising out of . . . libel, slander, misrepresentation [or] deceit."  28 U.S.C. § 2690(h).  Notably, the exception is not limited to claims for "libel, slander, misrepresentation [or] deceit;" it applies

12

to all claims that "aris[e] out of" such actions. *Id.* What matters is not "how [a claim is] described by a plaintiff" but whether the claim is "based on dissemination of defamatory information." *Edmonds v. United States*, 436 F. Supp. 2d 28, 35 (D.D.C. 2006) (citing *Kugel v. United States*, 947 F.2d 1504, 1506–07 (D.C. Cir. 1991)). The Court, accordingly, "must scrutinize the alleged cause of [plaintiff's] injur[ies]" to determine whether the alleged injury was caused by allegedly defamatory statements. *Upshaw v. United States*, 669 F. Supp. 2d 32, 44–45 (D.D.C. 2009) (quoting *Kugel*, 946 F.3d at 1507).

In describing his claims for intentional and negligent infliction of emotional distress, Gore repeatedly focuses on Fleck and Wiercinski's allegedly false statement about Gore, both to OIG investigators and in Fleck's lawsuit against the VA. *See, e.g.*, Dkt. 8 at 62 (Am. Compl. ¶ 88) (explaining that Fleck and Wiercinski engaged in "civil conspiracy, by fraudulently and recklessly lying repeatedly to multiple OIG investigators"); *id.* at 63 (Am. Compl. ¶90) (explaining that Fleck "attempted to further their civil conspiracy, by intentionally . . . repeating . . . false allegations about Gore" in the civil case Fleck brought against the VA); *id.* at 75 (Am. Compl. ¶ 97) (explaining that "VA and OGC leadership failed to sufficiently engage and check with . . . MPA and HR . . . who could have readily confirmed . . . that Gore did not . . . hire Wiercinski" in mid-September 2016, as Fleck and Wiercinski had claimed); *id.* at 80–81 (Am. Compl. ¶ 103–04). The Court thus concludes that these claims "aris[e] out of" Fleck and Wiercinski's alleged "misrepresentation[s]" and slanderous statements and are, therefore, barred by the libel/slander exception to the FTCA, 28 U.S.C. § 2680(h).

    3.    *Woods's Loss of Consortium Claim*

Finally, Gore's spouse, Heather Woods, brings a claim for loss of consortium under the FTCA. Dkt. 8 at 84–85 (Am. Compl. ¶ 108). As with Gore's claims for intentional and

negligent infliction of emotional distress, this claim "aris[es] out of" Fleck's alleged "misrepresentation[s]" about Gore's actions and is, therefore, also barred by the libel/slander exception to the FTCA.  28 U.S.C. § 2680(h).  The complaint alleges that "Fleck's acts of making repeated false allegations about Gore to this Court . . . —after Gore was no longer employed at VA . . . —coupled with the [VA's] acts and omissions, including a failure to prevent Fleck from doing so, and subsequently setting the record straight" caused Gore and Woods to suffer "severe emotional distress."  Dkt. 8 at 84 (Am. Compl. ¶ 108).  Because this claim, like Gore's claims for intentional and negligent infliction of emotional distress, arises out of Fleck's alleged false statements, it must also be dismissed.[1]

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion to dismiss, Dkt. 19.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  May 31, 2020

---

[1] To the extent Woods means to bring a loss of consortium claim under the APA, such claim is barred because the APA does not waive sovereign immunity for claims, like her loss of consortium claim, that seek money damages.  See 5 U.S.C. § 702.